873 So.2d 747 (2004)
STATE of Louisiana, Appellee
v.
Hernando Cortez HALEY, Appellant.
No. 38,258-KA.
Court of Appeal of Louisiana, Second Circuit.
April 22, 2004.
*748 Louisiana Appellate Project, by Kenota Pulliam Johnson, Counsel for Appellant.
Paul Joseph Carmouche, District Attorney, J. Thomas Butler, Lea R. Hall, Jr., Assistant District Attorneys, Counsel for Appellee.
Before WILLIAMS, PEATROSS and DREW, JJ.
DREW, J.
At bench trial, Hernando Cortez Haley was convicted of aggravated burglary. After adjudication as a third felony habitual offender, he was sentenced to serve 30 years at hard labor, without benefit of suspension of sentence or probation. We affirm his conviction and sentence.

FACTS
In the morning hours of July 16, 2002, the defendant, plus Marcus Antonio Haley and Cedric Deon Gibbs, approached the home of Danny and Bonnie Wilburn in Shreveport. One man knocked at the door. The Wilburns' 14-year-old grandson, Chase, looked through the peephole and did not recognize the black male standing outside. The young teen noticed a black Caprice, with dark tinted windows, in the driveway. Chase went to the kitchen to call his grandmother to ask if she had sent anyone to the house. The doorbell began ringing constantly. When he was unable to reach his grandmother by phone, he attempted to call 911, but the perpetrators began to break down the front door. He ran out the back door, *749 making haste in the rain to his grandparents' sandwich shop, a short distance away.
When Chase arrived at the store, he told his grandmother that someone was breaking into her home. She immediately called 911 and asked the people at a neighboring business to call her husband. Then she and her grandson returned to her home where they observed a black car with dark tinted windows pulling out of the driveway. They obtained the tag number and continued following the vehicle around the neighborhood until Mrs. Wilburn noticed a police unit headed toward her home. She turned around to meet the law officer at her home, where she described the vehicle and told the officer what items were missing from her home.
Meanwhile, using the information provided by Mrs. Wilburn, other officers made a felony stop. Defendant, who was seated in the right-rear passenger seat, bolted from the car. After a brief foot chase, he and his comrades were caught. Following conviction, adjudication and sentencing, defendant filed motions for modification of judgment and for reconsideration of sentence. The trial court denied both.

DISCUSSION
Sufficiency of Evidence
The defendant contends that:
 He was not involved in the burglary of the Wilburns' home.
 The state failed to prove the elements of aggravated burglary.
 The state failed to show that he unlawfully entered the Wilburns' residence, or that he armed himself while in the residence, or that someone was home at the time of the crime.
 Although he was in the vehicle when it was stopped by police, the reason he fled was because of outstanding warrants for unpaid parking tickets.
 His conviction should accordingly be set aside, as no one could place him at the scene of the crime and there was no physical evidence linking him to the crime, rendering the state's case lacking as per the test of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
The state argues that:
 Any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 Our jurisprudence does not require a person to be present in an inhabited dwelling at the time of the unauthorized entry.
 Stealing loaded weapons in the home satisfies the "arming himself" element of aggravated burglary.
 A person may be a principal to this offense even though he did not personally have possession of the weapon used in the commission of the crime.
 The trier of fact, in a credibility call, disbelieved the defendant's incredible story that his co-defendants picked him up within three or four minutes between the crime and the stop.
 The evidence as a whole leads to the conclusion that all three perpetrators actively participated in the crime.
Applicable law
La. R.S. 14:60 provides, in part:
Aggravated burglary is the unauthorized entering of any inhabited dwelling, or[1] of any structure, water craft, or movable where a person is present, with the intent to commit a felony or any theft therein, if the offender,
*750 (1) Is armed with a dangerous weapon; or
(2) After entering arms himself with a dangerous weapon; or
(3) Commits a battery upon any person while in such place, or in entering or leaving such place.
Being inhabited does not mean someone has to be present at the time of the burglary; "inhabited" does not mean "occupied." State v. Hall, 35,151 (La. App.2d Cir.9/26/01), 796 So.2d 164, 167, citing, State v. Powers, 344 So.2d 1049 (La.1977); and State v. Hicks, 286 So.2d 331 (La.1973).
The second tier of requirements may be satisfied by a perpetrator who is armed at the time of the offense, OR a perpetrator who arms himself (steals a dangerous weapon) during the offense, OR commits a battery upon a person while entering, leaving, or while inside the premises. State v. Hall, supra.
La. R.S. 14:24 states in pertinent part:
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.
There is no requirement that an indictment explicitly name the accused as "principal." That the accused is indicted for the offense itself, and not charged as an accessory after the fact, irrefutably evidences that he is charged as a principal. State v. Peterson, 290 So.2d 307 (La.1974).
Our law on sufficiency is well settled.[2]
*751 Application of law to facts
To obtain a conviction of aggravated burglary here, the state had to prove that the defendant (1) made an unauthorized entry into the Wilburns' home, (2) with the intent to commit a theft therein, and (3) armed himself therein. The state proved these elements, with the benefit of overwhelming direct and circumstantial evidence.
Chase identified various items taken, as well as the car and its license plate number. He provided the opening facts of this opinion.
Bonnie Wilburn, Chase's grandmother, testified that:
 Her sandwich shop is located about a block and a half from her home.
 Chase burst through the door very upset, wet from the rain, telling her that someone was breaking into the house.
 She called 911, then ran next door and asked the folks to call her husband.
 She and Chase left the store and drove home.
 She saw a car leaving her driveway, which they followed.
 She called out the license plate number twice while Chase wrote it down.
 The tinted windows kept her from counting the passengers.
 She and Chase followed the car to the neighborhood Albertsons, where the vehicle made a right on Mansfield Road.
 At that point, she turned around to meet the police at her home.
 She gave the police the license plate number and a description of the vehicle.
 One of the officers immediately put out an all-points bulletin for the vehicle.
 The perpetrators had taken out her Direct T.V. system, her surround sound, her VCR, her telephone answering machine, Chase's Play Station, a rifle, and a gun rack.
 The front door looked as if it had been kicked or beaten open.
 She observed shoe prints on the door.
 She was able to clearly identify the vehicle in question.
Danny Wilburn, Bonnie's husband and Chase's grandfather, testified that:
 He is employed with the Caddo Parish Sheriff's Office.
 He saw the defendant being arrested on Linwood Avenue.
 The defendant in court was the same individual who was arrested that day.
 He thought one of the weapons taken during the burglary was loaded.
 He identified his property, including weapons, in photos taken of the property seized from the defendant's vehicle.
Through the cumulative testimony of Lt. Kenneth Jackson, Corporal Scroggins, Officer McConnell, and Sgt. Wilson, the state proved that:
 The suspects' vehicle was under constant observation either by the victims or authorities, except for about four minutes of the chase, which would have given the vehicle time to travel 4.5 miles (the distance between where the suspects' vehicle was last seen by the victims until it was observed by Lt. Jackson).
*752  From then on, Jackson never lost sight of the vehicle, which he could see contained three occupants.
 Jackson identified at trial the photographs of the suspects' vehicle as the same vehicle he followed and which bore the same license plate number.
 After a brief chase, Jackson coordinated a felony stop, along with Sgt. Wilson, Corporal Scroggins, Officer McConnell and Corporal Walls.
 They all saw the defendant bail out of the suspects' vehicle.
 Officer McConnell pursued the defendant on foot, jumping fences and running through private lots, before ultimately apprehending him.
Detective Goodwin identified the suspects' vehicle, which bore the reported license plate number. He identified the trunk's contents, including weapons. In particular, he identified a 12-gauge shotgun and ammunition.
The trial court apparently found the state's witnesses to be credible, and a reviewing court accords great deference to the finder of fact's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, supra.
Although none of these witnesses placed the defendant at the crime scene, circumstantial evidence proved that he actively participated in the burglary, to-wit:
 his flight,
 his location on the back seat where much of the stolen property was found,
 the victims' identification of the car as the same car parked in the driveway before the burglary occurred and the same car seen leaving the crime scene minutes later, after the burglary had taken place, and
 the compressed time frame between the crime and the apprehension.
La. R.S. 14:24 states in pertinent part:
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.
Here, the evidence shows that the defendant was involved in the burglary as a "principal." Whether or not he personally kicked in the Wilburns' front door, or personally stole a gun, this defendant was actively involved in the burglary.
Furthermore, it is highly unlikely that only one person could have stolen the numerous items taken from the residence in this time span. Once inside the home, the intruders stole many items, including firearms and ammunition. Stealing a dangerous weapon satisfies the element of "arming himself." See, State v. Hall, supra.
The extremely unlikely alternative hypothesis given by the defendant (that the co-defendants picked him up after the crime, but before arrest) is unbelievable, even with a willful suspension of disbelief. Such an unlikely event would have had to occur within the three- to four-minute span that the suspects' vehicle was out of sight of the victims or police authorities. That two escaping criminals would stop and pick up a hitchhiker during the pursuit is a suggestion unworthy of belief. The trial court correctly found this crime was proven beyond a reasonable doubt.
Adjudication as a third felony offender
In order to enhance a sentence with a prior guilty plea, the state bears the burden of proving the guilty plea was constitutionally taken, and, to meet its burden, the state must introduce a contemporaneous record of a Boykin examination which *753 demonstrates the guilty plea was free and voluntary and which includes a waiver of the three constitutional rights specified in Boykinright to jury trial, right to confront his accusers, and privilege against self-incrimination. State v. Shelton, 621 So.2d 769 (La.1993). Appellate counsel argues that although the state proved the defendant was the same person identified in the two predicate felony convictions from 1996, the evidence presented was nevertheless insufficient to support a finding that the prior guilty pleas were free and voluntary, and obtained in compliance with Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).
The state submitted a certified copy of the bill of information, a certified copy of the court minutes, and a certified copy of the transcript for both the May 31, 1996, Simple Burglary conviction and the October 24, 1996, Unauthorized Entry of an Inhabited Dwelling conviction. Accordingly, the defendant's vague argument on this point is meritless, as he failed to present any evidence in opposition to the state's evidence or show any specific defects in his prior guilty pleas. The evidence submitted is amply sufficient to sustain the adjudication as a third felony offender.
Sentencing Errors
The defendant argues that the trial court administered him an excessive sentence after not adequately complying with La. C. Cr. P. art. 894.1. He argues that during sentencing, the trial court stressed the hardship caused to the victims in this case and gave minimal consideration to his personal information. He contends that the record contains an insufficient factual basis and offers no explanation for the sentence imposed. The defendant contends that the 30-year hard labor sentence without benefit of suspension of sentence or probation should be vacated and set aside.
The state argues that:
 The defendant's sentence is not excessive.
 The defendant has waived his right to challenge the trial court's compliance with La. C. Cr. P. art. 894.1 since he failed to raise this issue in his motion to reconsider sentence.
 Nonetheless, taking into account that the defendant had a sentencing range exposure of up to 60 years, his 30-year sentence is not excessive.
 The trial court had a firm understanding of the facts and circumstances surrounding this offense and this defendant.
 The sentence is appropriate and clearly individualized for this defendant and the offense he committed.
The law on excessiveness is clear.[3]
*754 We find that the trial court adequately complied with La. C. Cr. P. art. 894.1. by considering:
 the defendant's age of 24 years,
 his educational background of being a high school dropout,
 his employment history,
 his marital status (single, with one dependent child),
 various drug treatment programs attended by the defendant,
 therapy classes attended by the defendant,
 a letter from the defendant, and
 his participation as a speaker to a teen group about incarceration.
The trial court also reviewed the PSI of the defendant, which revealed his two 1996 convictions for simple burglary and unauthorized entry of an inhabited dwelling (the same convictions utilized in the habitual offender proceeding).
In addition, the court considered a 1998 DeSoto Parish plea bargain for the crime of illegal possession of stolen things in a misdemeanor amount (the defendant had been arrested for three felonies), and noted other felony arrests.
The trial court knew of the defendant's lengthy criminal history and the facts of this case. The sentencing exposure ran from 20 to 60 years, without benefit of suspension of sentence or probation. La. R.S. 15:529.1. This mid-range, 30-year hard labor sentence, to be served without benefit of suspension of sentence or probation, is quite reasonable under these facts. This sanction is in proportion to the crime and does not at all shock the sense of justice. This defendant earned every day of this punishment. We affirm in all respects.

DECREE
The defendant's conviction and sentence are AFFIRMED.
NOTES
[1] Please note the disjunctive here.
[2] The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, supra; State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132; State v. Hunter, 33,066 (La.App.2d Cir.9/27/00), 768 So.2d 687, writs denied, XXXX-XXXX (La.10/26/01), 799 So.2d 1150, 2001-2087 (La.4/19/02), 813 So.2d 424. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442.

The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La. 1983); State v. Owens, 30,903 (La.App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.8/30/02), 827 So.2d 508, writ denied, XXXX-XXXX (La. 11/14/03), 858 So.2d 422.
In cases involving a defendant's claim that he was not the person who committed the crime, the Jackson rationale requires the state to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Powell, 27,959 (La.App.2d Cir.4/12/96), 677 So.2d 1008 (on rehearing), writ denied, 96-1807 (La.2/21/97), 688 So.2d 520.
When circumstantial evidence forms the basis for the conviction, such evidence must exclude every reasonable hypothesis of innocence. The appellate court does not determine whether another possible hypothesis suggested by the defendant could afford an exculpatory explanation of the events; rather, when evaluating the evidence in the light most favorable to the prosecution, the court determines whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt under Jackson v. Virginia, supra. State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012, cert. denied, 513 U.S. 975, 115 S.Ct. 450, 130 L.Ed.2d 359 (1994).
[3] When a defendant's motion for reconsideration urges merely that the sentence is excessive, he is relegated only to a claim of constitutional excessiveness. State v. Mims, 619 So.2d 1059 (La.1993).

The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dunn, 30,767 (La.App.2d Cir.6/24/98), 715 So.2d 641. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864; State v. Hudgins, 519 So.2d 400 (La.App. 2d Cir.), writ denied, 521 So.2d 1143 (La.1988).
Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, supra.
A timely motion to reconsider sentence that fails to challenge the trial court's alleged failure to comply with La. C. Cr. P. art. 894.1, merely raising the issue of excessiveness of sentence, relegates the defendant exclusively to a claim of constitutional excessiveness. See State v. Mims, supra.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The second prong of the test is whether the sentence imposed is too severe depending on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, supra; State v. Bonanno, supra.